UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRENDA PARIS, ) | |
| ) | CASE NO. C11-578Z |
| Plaintiffs, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| WELLS FARGO FINANCIAL INC., et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**INTRODUCTION**

This matter comes before the Court on Defendants' Motion for Summary Judgment, docket no. 71. For the reasons discussed below, Defendants' Motion is hereby GRANTED.

**I.     BACKGROUND**

Plaintiff Brenda Paris obtained a refinance loan from Wells Fargo on June 20, 2001 for $110,068, secured by her condo. Deed of Trust, Ex. E to Decl. of John Keilholz in Supp. of Def.s' Mot. for Summ. J. ("Keilholz Decl.") (docket no. 73-1). On August 1, 2002, Ms. Paris,

represented by counsel, filed suit against Wells Fargo and various credit reporting agencies for violation of the Fair Credit Reporting Act, alleging among other things that "Wells Fargo reported a grossly inflated [payout] amount that made it appear plaintiff was obligated to pay a loan approximately three times the true loan amount," and that "Wells Fargo inaccurately reported plaintiff late on three payments through its reporting of the account." Compl. at ¶17, Paris v. Wells Fargo, 2:02-cv-1645TSZ (docket no. 1). Ms. Paris settled her lawsuit with Wells Fargo in April 2003. Settlement Agreement, Ex. I to Keilholz Decl. In exchange for $7,500 and an agreement that Wells Fargo would delete any instances of negative credit reporting, Ms. Paris released Wells Fargo "from any and all claims, demands, debts, liabilities and causes of action at law or in equity, known or unknown, suspected or unsuspected which Ms. Paris has ever had or now has or may have against Wells Fargo…arising out of or resulting from any matters in connection with the ACCOUNT…."[1] Id. Subsequent to the settlement, in November 2004, Wells Fargo granted Ms. Paris an interest refund of $239,269. Ex. G to Keilholz Decl. In December 2004, Ms. Paris signed a Loan Modification Agreement, lowering her interest rate to 10%. Loan Modification Agreement, Ex. to Plaintiff's Opp'n to Defs.' Summ. J. (docket no. 77 at 8). Ms. Paris' loan was paid in full on April 3, 2006. Ex. G to Keilholz Decl.

In 2008, Ms. Paris filed a pro se consumer complaint regarding her 2001 loan with the Office of the Comptroller of the Currency, which referred her complaint to the Washington State Department of Financial Institutions ("DFI"). Exs. J & K to Keilholz Decl. On July 21, 2008,

---

[1] The "ACCOUNT" references her 2001 refinance loan with Wells Fargo.

ORDER -2

DFI sent Ms. Paris a letter in which DFI acknowledged that her loan had initially been in violation of RCW 31.04.125(2) because it had used "the add-on method of computing interest where the repayment period exceeded three years and fifteen days."  DFI Resolution and Closure of Complaint, Ex. M to Keilholz Decl.  However, as to Wells Fargo, DFI "[had] no further requirements" and informed Ms. Paris that it understood Wells Fargo "has taken steps to remedy your situation, including converting your loan to a simple interest loan, refunding its finance charge, refunding interest, and reducing your interest rate to 10%."  Id.

On April 8, 2011, Ms. Paris filed a Complaint in this Court regarding her 2001 loan, which she subsequently amended to bring causes of action for (1) Breach of Settlement Agreement with DFI (First Cause of Action), (2) Reformation of Contract and Breach of Contract (Second Cause of Action), (3) Violation of Consumer Loan Act (Third Cause of Action), (4) Violation of Consumer Protection Act (Fourth-Sixth Causes of Action), and (5) Unjust Enrichment (Seventh Cause of Action).  Wells Fargo now moves for summary judgment seeking to dismiss all of Ms. Paris' claims on the grounds that her 2003 settlement bars this case, that DFI's 2008 letter granted her no new rights or remedies, and that the various statutes of limitation bar her claims.

## II. STANDARD OF REVIEW

The Court shall grant summary judgment if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the

suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In support of its motion for summary judgment, the moving party need not negate the opponent's claim, Celotex, 477 U.S. at 323; rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent, Anderson, 477 U.S. at 249.  To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn.  Id. at 255, 257.  When the record taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted.  See, e.g., Beard v. Banks, 548 U.S. 521, 529 (2006).

**III.　DISCUSSION**

**A.　Ms. Paris' Second, Third, Fourth, and Sixth Causes of Action are Barred By Her 2003 Settlement.**

Ms. Paris' Second, Third, Fourth, and Sixth Causes of Action all reference the same factual underpinnings of her 2002 lawsuit, namely that Wells Fargo had charged her excessive interest and fees in connection with her 2001 loan.  Her 2003 Settlement Agreement expressly provides that Ms. Paris released Wells Fargo "from any and all claims, demands, debts, liabilities and causes of action at law or in equity, known or unknown, suspected or unsuspected which Ms. Paris has ever had or now has or may have against Wells Fargo…arising out of or resulting from any matters in connection with the ACCOUNT…."  Settlement Agreement, Ex. I to Keilholz Decl.  Accordingly, because Ms. Paris' Second, Third, Fourth, and Sixth Causes of Action arise out of her

refinance loan with Wells Fargo, and these causes of action are all barred by her 2003 Settlement Agreement, the Court dismisses these claims. See Schwieger v. Harry W. Robbins & Co., 48 Wn. 2d 22, 25 (1955) (barring suit when prior settlement agreement had released defendant from all claims known or unknown).[2]

In her Opposition to Defendants' motion, Ms. Paris asserts for the first time that the Settlement Agreement does not bar her claims because "[t]he subject of the present case arises out of a different transaction" (the 2004 loan modification), she signed the Settlement Agreement under duress, and the Court should re-open her 2003 case. Plaintiff's Opp'n to Defendants' Summ. J. at 3-5, 10-11, 17-18 (docket no. 76). The Court does not consider arguments and factual assertions made for the first time in response to a summary judgment motion. See Wasco Prods., Inc. v. Southwall Technologies, Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings."); Fed. R. Civ. P. 8(a). In addition, Ms. Paris has no evidence that her 2004 loan modification was breached, Ms. Paris is mistaken as a matter of law that she was under duress when she signed the agreement, and the Court declines to grant Ms. Paris leave to reopen her 2003 case.

---

[2] In the alternative, Ms. Paris' claims are barred by res judicata. See Paris v. Wells Fargo, 2:02-cv-1645TSZ (docket no. 32) (dismissing all claims with prejudice); Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005) ("Res judicata applies when 'the earlier suit ... (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies.'" (quoting Sidhu v. Flecto Co., 279 F.3d 896, 900 (9th Cir. 2002)).

ORDER -5

For the first time in her Opposition, Ms. Paris implies that the Settlement Agreement cannot bar her present claims because her claims arise from a breach of her 2004 loan modification. Plaintiff's Opp'n to Defendants' Summ. J. at 3-5. She implies that the 2004 loan modification was breached because she was never given the refund promised and never sent a 1099-C Cancellation of debt tax statement for the year she paid off the loan. Id. at 5. However, her payment history shows she was given a refund of $498.33 when the loan was paid off. Ex. G to Keilholz Decl. Moreover, because the refund was less than $600, no 1099-C needed to have been sent. Loan Modification Agreement, Ex. to Plaintiff's Opp'n to Defs.' Summ. J. (docket no. 77 at 8).

Ms. Paris also asserts for the first time in her Opposition that she was under duress when she signed the Settlement Agreement. Plaintiff's Opp'n to Defendants' Summ. J. at 10-11. Specifically, Ms. Paris states that she

> was given one of two choices [sic] 1. Not sign the document and have Wells Fargo continue to report on the tradeline that my mortgage payments are continuously late and continue to have her [sic] credit rating destroyed, or, 2. Sign the form, give attorney 50% of $7,500.00 and try to get caught up on false late payments. Defendant WFF was holding plaintiffs [sic] credit report and plaintiffs [sic] reputation hostage to force the plaintiff to sign their Settlement Agreement in 2003 also known as "blackmail"

Id. at 10-11. In Washington, to show duress, Ms. Paris must show "wrongful or oppressive conduct" on the part of Wells Fargo. Retail Clerks Health and Welfare Trust Funds v. Shopland Supermarket, 96 Wn.2d 939, 944 (1982). "To establish duress or coercion, there must be proof of more than reluctance to accept or financial embarrassment….The mere fact that a contract is

ORDER -6

entered to under stress or pecuniary necessity is insufficient." Id. Ms. Paris has asserted that she was faced with a tough financial choice of whether to accept payment of $7,500 and settle her claims immediately or to pursue her claims at trial and risk having her credit report damaged in the interim. Such a tough financial choice, however, does not rise to the level of duress as a matter of law, as she has asserted no facts implicating wrongful or oppressive conduct on the part of Wells Fargo. Id.

Finally, Ms. Paris urges the Court to reopen her 2003 case. Plaintiff's Opp'n to Defendants' Summ. J. at 17-18. Federal Rule of Civil Procedure 60(b) allows the Court to relieve a party from a final judgment for any reason that justifies relief, including for fraud, misrepresentation, or misconduct by the opposing party. However, a motion under Fed. R. Civ. P. 60(b) must be made "within a reasonable time" and in the case of fraud, misrepresentation, or misconduct, no more than a year after the entry of the judgment. Fed. R. Civ. P. 60(c)(1). Because Ms. Paris has not moved within a reasonable time for relief from judgment, the Court declines to grant her leave to reopen her 2003 case.

**B.     Ms. Paris' First, Fifth and Seventh Causes of Action Fail as a Matter of Law.**

In her First Cause of Action for Breach of Settlement, Ms. Paris alleges that the July 2008 letter from DFI makes reference to a "settlement" between DFI and Wells Fargo, in which Wells Fargo promised to "reform [Ms. Paris'] loan, retroactively reduce interest to 10% during the life of the loan and refund the excessive interest charges to the plaintiff." Compl. ¶ 23. Her Fifth Cause of Action (Violation of Consumer Protection Act) and Seventh Cause of Action (Unjust

Enrichment) similarly make reference to a duty by Wells Fargo to "make restitution" to Ms. Paris in connection with the DFI letter. Ms. Paris believes she has a cause of action to enforce this alleged settlement between DFI and Wells Fargo. Ms. Paris, however, is mistaken as to the meaning of the DFI letter and the ability of the letter to give Ms. Paris a cause of action.

The DFI letter merely served to explain to Ms. Paris that DFI understood Wells Fargo had previously taken steps to cure any defects in her loan, which indeed Wells Fargo had done back in 2004. See Loan Modification Agreement, Ex. to Plaintiff's Opp'n to Defs.' Summ. J (docket no. 77 at 8). Even if Wells Fargo had not taken the steps DFI reported Wells Fargo to have taken, the letter does not serve as evidence of some sort of agreement between Wells Fargo and DFI. Finally, even if there had been some sort of agreement or settlement between Wells Fargo and DFI, there is no indication that Ms. Paris has standing to enforce any such agreement. See DFI Resolution and Closure of Complaint, Ex. M to Keilholz Decl. (stating that "the [DFI] retains the authority to reopen this complaint in the event that subsequent information comes to our attention relevant to this matter" but saying nothing to the effect that Ms. Paris has standing to enforce any decision by DFI). Accordingly, the Court dismisses Ms. Paris' First, Fifth and Seventh Causes of Action, all which are premised on liability arising from the DFI letter.[3]

///

///

///

---

[3] Because the Court has dismissed Ms. Paris' Complaint on other grounds, the Court does not reach Defendants' argument that most of Ms. Paris' claims are barred by statutes of limitation.

ORDER - 8

## IV. CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment, docket no. 71.

IT IS SO ORDERED.

DATED this 23rd day of February, 2012.

THOMAS S. ZILLY
United States District Judge